UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-632-H

JOHN B. SPENCER and
TABITHA A. SPENCER,

            PLAINTIFFS

V.

WRIGHT MEDICAL TECHNOLOGY,
INC., et. al.,            DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, John B. Spencer and Tabitha A. Spencer (the "Spencers") brought this suit in Jefferson Circuit Court against Wright Medical Technology ("Wright"), manufacturer of the Profemur hip implant, and Barry Stokes and Greg May ("Stokes" and "May"), sales representatives and distributors of Wright's implants in Kentucky. Plaintiffs assert claims under strict liability, negligence, and breach of warranty based on a Profemur hip implant, installed in John Spencer on December 1, 2005, that fractured on February 9, 2009. After deposing John Spencer's physician, Dr. Richard Sweet, Wright removed the case to federal court, invoking this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332 and 1441. Now before the Court is Plaintiffs' motion to remand the case to state court.

I.

As the removing party, Wright carries the burden to show this Court has subject matter jurisdiction over the suit. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir.1993). Diversity jurisdiction exists only when there is complete diversity between plaintiffs and defendants. *E.g.*, *Cleveland Hous. Renewal Project v. Deutsche Bank*, 621 F.3d 554, 559 (6th

Cir. 2010). Here, Stokes and May are both Kentucky residents, as are the Spencers. Nondiverse defendants will typically preclude diversity jurisdiction, but Wright alleges the Spencers fraudulently joined Stokes and May to this action for the sole purpose of preventing removal from state court. Wright argues that it learned through Dr. Sweet's deposition that no basis exists for a cause of action against Stokes and May and therefore the proper parties to the suit are completely diverse.

To invoke the judicially-created fraudulent joinder exception to the complete diversity requirement, Wright "must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). The Court must resolve disputed questions of fact and any ambiguities in the controlling state law in favor of the Spencers as the nonremoving party. *Alexander*, 13 F.3d at 949 (quoting *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.)). If there is a colorable basis for a cause of action against the nondiverse defendants, the Court must remand the action to state court. *Coyne*, 183 F.3d at 493.

## II.

The parties agree as to most of the facts relevant to Plaintiffs' remand motion. Before selecting the Profemur device, Dr. Sweet met with Stokes and May to discuss its suitability for a patient of John Spencer's size, age, and activity level. Stokes and May gave Dr. Sweet technical literature regarding Profemur and answered his questions. Dr. Sweet was concerned particularly about the modular neck component of the device and asked Stokes and May about the potential for failure. According to Dr. Sweet, Stokes and May represented to him that there had been no

fractures of the Profemur modular neck.[1]

The modular neck of the Profemur device implanted in John Spencer failed three years after his surgery. Dr. Sweet met with Stokes and May again after the failure and learned that the Profemur "had some failures around the world with heavy patients," including failures in the modular neck. Dr. Sweet Dep., Oct. 20, 2010 at 32. Most of these failures occurred in Europe, where the Profemur primarily had been used before introduction in the United States. Stokes was aware of these failure rates in Europe prior to John Spencer's initial surgery, but did not know whether any failures were in the neck of the device. Dr. Sweet testified that had he known about these failure rates he would not have selected the Profemur device because John Spencer's age, size, and activity level would put him among the most likely patients to suffer a fracture.

III.

Plaintiffs make three arguments in support of their motion to remand, but the Court need only address their argument that Stokes and May were not fraudulently joined as nondiverse defendants.[2] The Complaint alleges claims for strict liability, negligence, and breach of warranty against Stokes and May based on their failure to provide appropriate information regarding the Profemur's strength, endurance, and weight limits. Kentucky courts impose liability on sellers of a product "who knew or should have known at the time of distribution or sale that the product was in a defective condition and unreasonably dangerous." *Adams v. Minnesota Mining & Mfg.*,

---

[1] Neither Stokes nor May recall any conversation about modular neck failures with Dr. Sweet. The Court accepts Dr. Sweet's testimony as fact for the purpose of determining fraudulent joinder. *See Alexander*, 13 F.3d at 949.

[2] Plaintiffs argue that Wright's removal of this action was procedurally defective, as it came more than one year after the filing of the action and more than 30 days from the date on which Wright learned the information it claims gave it notice that Stokes and May were fraudulently joined. The Court does not address these procedural arguments because the Court's decision on the substantive issue – whether a colorable claim exists against Stokes and May – resolves the matter.

No. 4:03-CV-182-M, 2004 WL 718917, at *3 (W.D. Ky. March 30, 2004) (citing *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 60 (Ky. Ct. App. 1999)).  Plaintiffs argue that since Kentucky recognizes the type of claim it alleges against Stokes and May as sellers of the Profemur device, Wright cannot invoke the fraudulent joinder exception to the complete diversity requirement.

Wright responds that Ky. Rev. Stat. § 411.340, Kentucky's "middleman" statute, precludes any cause of action the Spencers could maintain against Stokes and May.  That statute provides:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

Ky. Rev. Stat. Ann. § 411.340 (LexisNexis 2010).  Wright argues that Stokes and May were distributors of the Profemur device and there is no allegation that the device John Spencer received was not in its original manufactured condition.  The statute, Wright contends, protects Stokes and May from any possible liability towards the Spencers.  As such, Plaintiffs have no colorable claim against Stokes and May and the Court should consider them fraudulently joined for the purpose of assessing diversity jurisdiction, Wright argues.

The Court is not convinced that Ky. Rev. Stat. § 411.340 undoubtedly exempts Stokes and May from liability here so that no colorable claim exists against them.  This Court previously has considered § 411.340 in the context of fraudulent joinder and reached different

conclusions based on factual differences in the cases. *Compare Bennet v. Ford Motor Co.*, No. 5:07-CV-115-R, 2007 WL 456281, at *3 (W.D. Ky. Dec. 21, 2007) (finding car dealership immune under § 411.340 where plaintiff made no effort to develop facts indicating dealership knew about alleged defect), *and Salisbury v. Purdue Pharm., L.P.*, 166 F. Supp. 2d 546, 551 (E.D. Ky. 2001) (finding pharmacies immune under § 411.340 where plaintiffs did not allege pharmacies knew or should have known product was defective), *with Adams*, 2004 WL 718917, at *3 (finding § 411.340 did not apply so as to establish fraudulent joinder where plaintiffs alleged distributors knew or should have known respirators were defective and unreasonably dangerous for use in humid coal mines).

  The Spencers' claims against Stokes and May appears more similar to the *Adams* case because the nondiverse defendant distributors are alleged to have known that the product was unreasonably dangerous to the consumer. This allegation satisfies an express condition by which § 411.340 does not protect a distributor from a product liability action. *See* Ky. Rev. Stat. Ann. § 411.340 (distributor not liable "unless . . . [it] knew or should have known at the time of distribution or sale of such product that the product was in defective condition, unreasonably dangerous to the user or consumer").

  Facts in the record support the Spencers' allegations. For example, Stokes testified in his deposition that at the time of his first meeting with Dr. Sweet he knew about Profemur failure rates in Europe but did not know the specific part of the device that had failed in those patients. The existing information on Profemur failures, combined with Dr. Sweet's expressed concern about using a model with a modular neck on a patient of John Spencer's size and age, give Plaintiffs a colorable argument that Stokes and May either knew or should have known the

device would be unreasonably dangerous.  In contrast, the plaintiffs in *Bennet*, a case in which this Court found fraudulent joinder, did not develop facts or propound discovery requests against the nondiverse defendant, nor opposed its summary judgment motion dismissing the claim.

Wright's attempt to distinguish *Adams* falls short of its goal.  Wright argues the plaintiffs in *Adams* alleged "more specific or special knowledge of dangerousness by the retailer." 2004 WL 718917, at *3 (internal quotations omitted).  But the *Adams* plaintiffs did not allege knowledge any more specific or special than what the Spencers have alleged here.  Nor does Wright's citation to this Court's decision in *Webb v. Humana Inc.*, No. 3:09-CV-857-H, 2010 WL 456915 (W.D. Ky. Feb. 3, 2010) bolster its argument for fraudulent joinder.  In *Webb*, it was "essential" to the Court's finding of fraudulent joinder that the plaintiff admitted he did not engage in a "protected activity," a required element of his retaliation claim against the nondiverse defendant.  The Court explained that had "plaintiff disputed the lack of evidence to support his claim, remand would be necessary." *Webb*, 2010 WL 456915, at *2, n.1 (citations omitted).  Removal was only appropriate in *Webb* because there was no dispute that facts necessary to the claim against the nondiverse defendant were absent.  *Id.*

The Sixth Circuit has set a high bar for defendants invoking the fraudulent joinder exception to the requirement of complete diversity between parties in actions removed to federal court.  Wright has not shown Kentucky's middleman statute necessarily precludes a colorable claim against Stokes and May.  Although such claims may ultimately fail on the merits, the ultimate success of claims is not the focus of this Court's jurisdictional analysis.  Resolving any ambiguities of fact or law in favor of the nonremoving party, the Court finds the Spencers' claims colorable and diversity between the parties lacking.  *See Alexander*, 13 F.3d at 949.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' motion to remand the action to state court is SUSTAINED and this case is hereby REMANDED to Jefferson Circuit Court.

cc: Counsel of Record